UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAKEEN PARKINSON,

                Plaintiff,

     v.

1199 SEIU NATIONAL BENEFIT FUND, and
BENEFIT FUND STAFF ASSOCIATION,

                Defendants.

**MEMORANDUM AND ORDER**
22-cv-01004 (HG) (RER)

**HECTOR GONZALEZ**, United States District Judge:

       Before the Court is an action brought by Plaintiff Rakeem Parkinson ("Plaintiff") against Defendants 1199 SEIU National Benefit Fund ("NBF," or the "employer"), and the Benefit Fund Staff Association (the "BFSA," or the "union") (collectively, "Defendants"). Plaintiff alleges a breach of the duty of fair representation against the union and a breach of a collective bargaining agreement against his employer, both under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See* Plaintiff's Complaint, ECF No. 1 ("Compl.").

       Presently before the Court is Defendant NBF's motion to dismiss the Complaint pursuant to Rule 12(b)(6) (the "Motion"). ECF No. 22. For the reasons set forth below, the Motion is granted in its entirety and Plaintiff's claims against Defendants are dismissed with prejudice.

## BACKGROUND

       Plaintiff was employed by NBF before his suspension on July 9, 2021. Compl. ¶¶ 7, 10, 24–27. While he worked for NBF, Plaintiff was represented by the BFSA. *Id.* ¶ 7. The Collective Bargaining Agreement ("CBA") between the NBF and the BFSA laid out the terms and conditions of Plaintiff's employment, including that Plaintiff could be terminated only for cause. *Id.* ¶ 7–8.

On June 30, 2021, Plaintiff and a co-worker had an altercation in the workplace. *Id*. ¶¶ 10–23. The co-worker became enraged when Plaintiff mentioned the co-worker's son. *Id*. ¶¶ 12–13. A different co-worker intervened, and things calmed down. *Id*. ¶ 15. Later that day, Plaintiff walked past the co-worker with whom he had the earlier altercation and told him that "[Plaintiff] hadn't said anything about his son," resulting in another confrontation. *Id*. ¶¶ 18–20. That same day, Plaintiff was suspended. Thereafter, the NBF investigated the incident and terminated Plaintiff on July 9, 2021. *Id*. ¶¶ 24–26.

Plaintiff grieved his termination, which the NBF denied. *Id*. ¶¶ 30–31. Plaintiff then requested that the BFSA submit his grievance to arbitration. *Id*. ¶ 32. The termination was investigated by the BFSA Grievance Committee, which recommended submitting Plaintiff's claim to arbitration. *Id*. ¶¶ 32–35. The BFSA Executive Board, which has final say over which grievances proceed to arbitration, reviewed the recommendation of the Grievance Committee and overruled its recommendation. *Id*. ¶¶ 34, 37.

## PROCEDURAL HISTORY

On February 24, 2022, Plaintiff filed this "hybrid"[1] breach of the duty of fair representation and breach of contract action under Section 301 of the Labor Management

---

1   "A 'suit, which alleges that the employer breached the [CBA] and that the union breached its duty of fair representation, is known as a hybrid [Section] 301/fair representation claim.'" *Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 301 (E.D.N.Y. 2019) (quoting *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017) (alterations in original))

Relations Act against his former employer, NBF, and former union, the BFSA.  Compl. ¶¶ 4–5.  NBF waived service on March 24, 2022.[2]  ECF No. 10.

On May 23, 2022, NBF filed a pre-motion conference letter regarding its proposed motion to dismiss the Complaint for failure to state a claim.  ECF No. 12.  On July 8, 2022, the NBF filed its Motion.  ECF No. 22.  On August 3, 2022, Plaintiff filed his opposition to the Motion.  ECF No. 26.  On August 18, 2022, the NBF filed its reply.  ECF No. 27.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Benny v. City of Long Beach*, No. 20-CV-1908, 2021 WL 4340789, at *7 (E.D.N.Y. Sept. 23, 2021).

---

[2]   Defendant BFSA has not been served and has not appeared in this case.  *See* ECF No. 17–19 (correspondence between Plaintiff and BFSA indicating that Plaintiff has not served the union).

## **DISCUSSION**

### **A. The Court May Consider the BFSA Executive Board's Memorandum**

"It is well settled that a Court cannot consider documents outside the pleadings on a Rule 12(b)(6) motion to dismiss unless the documents are incorporated by reference in the complaint or are integral to the complaint." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents . . . [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (citation and quotation marks omitted) (alterations in original). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

Defendant NBF attaches eight extrinsic documents along with its Motion. *See* ECF No. 24 (Exhibits 1–8). NBF argues that "[t]here is no dispute that Plaintiff refers to" four of these documents in his Complaint: "[T]he text of the CBA, NBF's July 9, 2021 termination letter to Plaintiff, the BFSA Grievance Committee's November 17, 2021 memorandum, and the BFSA Executive Board's December 8, 2021, memorandum," and thus that "the Court can properly consider each of these documents in connection with NBF's Motion to Dismiss the Complaint."[3]

---

[3] The other four documents NBF attaches are: Plaintiff's Requests for a Grievance Hearing, ECF Nos. 24-3, 24-4 (Exhibits 3 and 4); the NBF's response to Plaintiff's Grievance, ECF No. 24-5 (Exhibit 5); and the BFSA Constitution, ECF No. 24-6 (Exhibit 6). Plaintiff reports that "[u]ntil defendant . . . filed its motion to dismiss, [he] had never seen Exhibits 3, 4, 5

ECF No. 23 at 8 n.3.  Plaintiff does not object to the Court considering three of these four documents:  the text of the CBA; the NBF's July 9, 2021 termination letter to Plaintiff;[4] and the BFSA Grievance Committee's November 17, 2021 memorandum.  ECF No. 25 at 4–5.  However, Plaintiff argues that the BFSA Executive Board's December 8, 2021 memorandum ("Board Memo") should *not* be considered, except as an acknowledgment that "the Executive Board communicated its decision to plaintiff on December 8, 2021."

Notably, unlike some of the documents attached by Defendant, Plaintiff does not claim that he had "never seen [the Board Memo] before," nor that "he did not rely on [it] in drafting the complaint."  *See. e.g.,* ECF No. 25 at 4.  Rather, Plaintiff argues that the "document is hearsay and plaintiff objects to its consideration for the truth of any of the factual assertions contained in it."  *Id.* at 5.  This is not the correct standard.  When deciding to consider documents outside of the pleadings on a motion to dismiss, courts do not look to the truth of the documents, but whether they are "incorporated by reference in the complaint or are integral to the complaint."  *Allstate*, 771 F. Supp. 2d at 268.

The Court concludes that it may consider the Board Memo because it is incorporated by reference in the Complaint.  The relevant portion of the Complaint states:  "On December 8, 2021, the Union's President wrote to plaintiff and informed him that the Union's Executive

---

or 6" and "[t]hose documents played no part whatsoever in the drafting of plaintiff's complaint."  ECF No. 25.  The Court finds that those documents are not incorporated by reference, nor are they integral to the Complaint.  For that reason, the Court will not consider Exhibits 3, 4, 5 or 6 when deciding the Motion.

[4]  Specifically, Plaintiff notes that he does not object to the termination letter "to the extent that it documents the date and purported reasons for plaintiff's termination."  ECF No. 25 at 4–5.

Board had decided not to submit plaintiff's grievance to arbitration."  Compl. ¶ 37.  The Court finds that this is a clear, definite, and substantial reference to the Board Memo.  *See Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) ("A document is incorporated by reference if the complaint makes, 'a clear, definite and substantial reference to the document[].'") (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016)); *see also McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 139 (E.D.N.Y. 2014) (considering extrinsic documents in a hybrid claim when deciding motion to dismiss, even though they had not been attached to the Complaint, because the documents were incorporated by reference).

### B. The Complaint Fails to Allege Sufficiently that the BFSA Breached Its Duty of Fair Representation

Defendant NBF argues that the Complaint fails to state a "hybrid" claim against NBF and the BFSA because Plaintiff fails to allege sufficient facts demonstrating that the BFSA breached its duty of fair representation to Plaintiff.  ECF No. 23 at 7.  The Court agrees.

"To properly plead a [hybrid] claim, [an] employee must allege *both* (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer."  *McLeod*, 995 F. Supp. 2d at 142 (citing *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997) (emphasis added) (internal quotation marks omitted).  "The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union to serve the interests of all members without hostility or discrimination . . . to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  *Forkin*, 394 F. Supp. 3d at 300 (citing *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015)) (internal quotation marks omitted); *see*

*also Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Forkin*, 394 F. Supp. 3d at 300 (citing *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017)).

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, . . . as to be irrational." *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. 2015) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). "A union's conduct is discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Perero*, 151 F. Supp. 3d at 284 (internal quotation marks omitted). "To plead that a union's actions were undertaken in 'bad faith,' the plaintiff must allege 'fraudulent, deceitful, or dishonest action.'" *Id*. (quoting *White*, 237 F.3d at 179).

Here, Plaintiff argues that the union breached its duty of care when it decided not to pursue arbitration. ECF No 26 at 7. Specifically, Plaintiff alleges that the decision of the Executive Board to overrule the Grievance Committee is evidence that the decision "could properly be considered arbitrary or capricious."⁵ *Id*. At 8. He claims that the "record does not reveal why the BFSA Executive Board overruled the Grievance Committee." *Id*.

---

5       The Complaint contains no allegations that the union "engaged in intentional or severe discrimination or that it was motivated by animus towards [Plaintiff] . . . . Nor do[es] [it] allege that the decision[] . . . [was] unrelated to legitimate union objectives." *Perero*, 151 F. Supp. 3d at 285. The Complaint also does not allege that the union engaged in any "fraudulent, deceitful, or dishonest action." *Id.* at 284. Thus, given that there are no allegations of discrimination or

However, the Executive Board explicitly laid out its reasons for not pursuing arbitration in its December 8, 2021, memorandum:

> The Executive Board reviewed the written charges against you, the witness statements and your statement, viewed the videotapes of the incident, and reviewed your disciplinary record, and had a long discussion. After doing that, the Executive Board has concluded that you violated the employer's workplace policy by vehemently pursuing an argument with another employee over an extended period, in several locations. Given your disciplinary record, and past warnings for similar behavior (which the union has discussed with you), the Executive Board determined that the BFSA will not pursue your termination grievance to arbitration.

ECF No. 24-8 ("Board Memo").

While the burden is not on Plaintiff to prove that the BFSA's decision was arbitrary, he must still provide enough facts to "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that the BFSA acted "so far outside a wide range of reasonableness as to be irrational." *Perero*, 151 F. Supp. 3d at 284. In addition, "[j]udicial review of an alleged breach of a union's duty of fair representation is 'highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Id.* (quoting *O'Neill*, 499 U.S. at 78).

The only factual support that Plaintiff has for his allegation that the BFSA violated its duty of fair representation is that the Executive Board, after reviewing the evidence of the Grievance Committee, chose not to pursue arbitration.[6] Compl. ¶¶ 32–37. However, "a union

---

bad faith, the Court focuses on whether or not the Complaint contains sufficient facts to give rise to a plausible inference that the union acted arbitrarily.

[6]    Plaintiff claims that "we will not know why the BFSA Executive Board overruled the Grievance Committee . . . until discovery is conducted." ECF No. 26 at 8. However, "Rule 8 . .

does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." *Ramlogan v. 1199 SEIU*, No. CV-11-0125, 2012 WL 113564, at *4 (E.D.N.Y. Jan. 11, 2012) (citing *Vaca*, 386 U.S. 192). As the Supreme Court explained in *Vaca*:

> "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation."

386 U.S. 191–192.

"A union does not act arbitrarily where it 'fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.'" *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011) (quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154–55 (2d Cir. 1994)). The union "has a duty to perform some minimal investigation," *Little Flower*, 793 F. Supp. 2d at 548, and, after such an investigation, acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim," *id.* (internal citation and quotation marks omitted). If, after an investigation and a review of the evidence, a union decides that pursuing a grievance to arbitration would be futile, that decision, in and of itself, is not arbitrary. *See Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 128 (2d Cir. 1998) (holding that a union's

---

. does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "In other words, an assertion that Plaintiff[] may be able to provide the necessary allegations after discovery is not sufficient to survive a motion to dismiss, the pleadings themselves must state a plausible claim." *Wildman v. Deutsche Bank Aktiengesellschaft*, No. 21-CV-4400, 2022 WL 17993076, at *10 (E.D.N.Y. Dec. 29, 2022)

decision not to pursue members' grievances to arbitration because it believed such action "would be fruitless . . . did not breach its duty of fair representation").  Nor does an allegation that the union made an error in evaluating the merits of Plaintiff's grievance give rise to an inference that it acted arbitrarily.  *Little Flower*, 793 F. Supp. 2d at 548 ("[a] union does not act arbitrarily where it . . . fails to process a grievance due to error in evaluating the merits of the grievance"); *see also Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 196 (E.D.N.Y. 1998) ("Allegations of negligence or errors by a union in processing grievances are insufficient . . . to make out a *prima facie* case that the Union breached its duty fairly to represent the plaintiff.").  "[U]nion members do not have an 'absolute right to have [their] grievances taken to arbitration.'"  *Id*. (quoting *Vaca*, 386 U.S. at 191); *see also Cruz*, 34 F.3d at 1153–54.

       Here, Plaintiff's grievance was processed, Compl. ¶¶ 30–31, and the Grievance Committee investigated whether further process was required, *id.* ¶¶ 33–35.  The Executive Board reviewed the Grievance Committee's report recommending arbitration but decided that it did not want to proceed to arbitration given the totality of the circumstances, including "past warnings [to Plaintiff] for similar behavior."  *Id.* ¶¶ 34, 37; ECF No. 24-8.  The union met its duty to investigate Plaintiff's grievance.  Plaintiff argues that "[t]here is no functional difference between failing to investigate a grievance and investigating a grievance and then ignoring the investigation."  ECF No. 26 at 8.  Plaintiff, however, has not pled any facts that would permit the Court to infer the BFSA "ignored" the investigation—rather, it appears the Executive Board fully acknowledged the investigation when it "reviewed the written charges against [him], the witness statements and [his] statement, viewed the videotapes of the incident, and reviewed [his] disciplinary record, and had a long discussion."  ECF No. 24-8 (Board Memo).

That union leadership chose not to follow an internal, non-binding, committee's recommendation is, at most, an allegation that the Executive Board made an error in evaluating the merits of the grievance by giving the Grievance Committee's recommendation insufficient weight.  This allegation is not sufficient to give rise to an inference that the BFSA acted in an arbitrary and capricious manner and violated its duty of fair representation to Plaintiff.  *See Perero*, 151 F. Supp. 3d at 284 (granting motion to dismiss in order to "accord the Union the 'wide latitude' that is typically given to unions in recognition of the fact that 'negotiators need [such latitude] for the effective performance of their bargaining responsibilities'") (quoting *O'Neill*, 499 U.S. at 78) (alteration in original); *Rivera v. Commc'n Workers of Am.*, No. 16-CV-1673, 2017 WL 4338754, at *11 (E.D.N.Y. Sept. 29, 2017) (granting motion to dismiss because the "law grants broad deference to unions in conducting the business of representing their members"); *Lettis*, 39 F. Supp. 2d at 197 (granting motion to dismiss because plaintiff, at most, alleged union acted negligently in processing his grievance); *but see Little Flower*, 793 F. Supp. 2d at 548 (finding plaintiff's allegations that union "failed to perform a minimal investigation" of her grievance and then "falsely represented that her grievance was being processed" were sufficient to allege plausibly a breach of the duty of fair representation); *Moore v. Roadway Express, Inc. and Local 707*, No. 07–CV–977, 2008 WL 819049, at *5 (E.D.N.Y. March 25, 2008) (finding plaintiff plausibly alleged a breach of the duty of fair representation where the union "fail[ed] to investigate plaintiff's grievances"); *Yearwood v. New York Presbyterian Hosp.*, No. 12 Civ. 6985, 2013 WL 4713793, *4 (S.D.N.Y. Aug. 20, 2013) (finding plaintiff plausibly alleged a breach of the duty of fair representation where the union initiated arbitration but then inexplicably failed to follow through with the arbitration).

### C. Plaintiff's Breach of Contract Claim is Preempted

Plaintiff's second claim simply states: "[b]ased on the foregoing, the Fund violated the collective bargaining agreement by terminating plaintiff without cause." Compl. ¶ 46. With respect to this claim, Defendant NBF argues that, to the extent Plaintiff's breach of contract claim against it is brought under a state common law theory,[7] it "is preempted by Section 301 and must be dismissed as a matter of law." ECF No. 23 at 10. The Court agrees.

"Plaintiff's breach of contact claim . . . is 'founded directly on rights created by collective-bargaining agreements,' and it is thus preempted by [Section] 301 of the Labor Management Relations Act." *Calderon v. United States Postal Serv.*, No. 18-CV-7085, 2022 WL 1213320, at *5 (E.D.N.Y. Apr. 25, 2022) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *see also Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 28 (E.D.N.Y. 2017) (finding plaintiff's "state law claims . . . were completely preempted by" federal law in a hybrid claim). "Under Section 301, state law based claims for suits for violation of contracts between an employer and a labor organization are completely preempted, and [Section] 301 and federal common law govern instead." *Calderon*, 2022 WL 1213320, at *5 (internal quotation marks omitted) (citing *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997)). Therefore, the Court finds that—to the extent that Plaintiff is making a state common law claim for breach

---

[7]  The Complaint alleges two causes of action: "Breach of Duty of Fair Representation Against the Union" and "Violation of the CBA Against the Fund." Compl. ¶¶ 45–46. It is unclear whether Plaintiff's second cause of action is making a breach of contract claim under state common law, and Plaintiff does not address the issue in his opposition, *see* ECF No. 25. The Court, nevertheless, chooses to address this issue to avoid the risk of not addressing all of Plaintiff's claims.

of contract in the Complaint—that claim is preempted by Section 301 and thus dismissed as a matter of law.

### D. Claims Against the BFSA

Defendant BFSA has neither appeared in this action, nor moved to dismiss the Complaint. "[H]owever, '[a] district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard.'" *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 232 (E.D.N.Y. 2020) (quoting *Whitfield v. O'Connell*, No. 09 Civ. 1925, 2010 WL 1010060, at *7 n.4 (S.D.N.Y. Mar. 18, 2010), *aff'd*, 402 F. App'x 563 (2d Cir. 2010). Here, the Court has found that Plaintiff failed to state a claim that the BFSA breached its duty of fair representation as to Plaintiff, and therefore, that Plaintiff's hybrid claim fails as to both the moving and nonmoving defendant. *See McLeod*, 995 F. Supp. 2d at 142 ("To properly plead a [hybrid] claim, [an] employee must allege both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer.") (internal citation and quotation marks omitted). Plaintiff has had a fair opportunity to be heard on this issue, *see* ECF No. 26, and, therefore, the claim against BFSA is dismissed.

**CONCLUSION**

For the foregoing reasons, the Motion is GRANTED.  The Court dismisses Plaintiff's Complaint, with prejudice, as to both Defendants.[8]  The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
January 31, 2023

---

[8] The Court finds that dismissal with prejudice is warranted for two reasons:  "First, Plaintiff has not asked for leave to amend as an alternative to denying the motion to dismiss." *Goodman v. Goodman*, No. 21-CV-10902, 2022 WL 17826390, at *21 (S.D.N.Y. Dec. 21, 2022); *see also Cybercreek Entertainment, LLC v. U.S. Underwriters Insurance Company*, 696 F. App'x 554, 555 (2d Cir. 2017) ("[plaintiff's] failure to request leave to amend alone supports the District Court's dismissal with prejudice").  Second, because the Court cannot identify what additional facts Plaintiff could allege that could give rise to an inference that the union acted arbitrarily, it finds that "any attempt to re-plead would [] be futile." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022); *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-CV-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) ("Where 'nothing in the record suggests that another complaint could remedy the legal deficiencies,' the district court does 'not abuse its discretion in failing to provide defendants with leave to amend.'") (quoting *In re Liberty Tax, Inc. Sec. Litig.*, No. 20-652, 2020 WL 5807566, at *5 (2d Cir. Sept. 30, 2020)); *see, e.g., Ramlogan*, 2012 WL 113564, at *5 (finding factual allegations in plaintiff's complaint "insufficient to state a claim for breach of the duty of fair representation" and granting motion to dismiss with prejudice).